UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

UNITED STATES OF AMERICA for the use and benefit
of CONSTRUCTION ASSOCIATES, INC., pursuant
to 40 U.S.C.A. §3133 and CONSTRUCTION
ASSOCIATES, INC.

CIVIL ACTION
FILE NO.:

08 CIV. 6311

Plaintiffs,

COMPLAINT

- against -

JUDGE KARAS

THYSSENKRUPP ELEVATOR CORPORATION,
and FEDERAL INSURANCE COMPANY,

Defendants.
-------------------------------------------------------------------x

This complaint of the UNITED STATES OF AMERICA for the use and benefit of
Construction Associates, Inc. and of CONSTRUCTION ASSOCIATES, INC. ["CAI"] against
THYSSENKRUPP ELEVATOR CORPORATION ["ThyssenKrupp"] and FEDERAL
INSURANCE COMPANY alleges as follows:

### Introduction

1.  This suit is commenced for two reasons: to seek payment on a payment bond
    issued to assure that CAI would be paid for its work, labor, and services rendered
    and materials provided; and to seek damages from ThyssenKrupp for
    ThyssenKrupp's breach of its contract with CAI.

2.  The project for which CAI performed its services and provided materials is known
    as Elevator Modernization at VA New York/ New Jersey Health Care System,
    Castle Point Campus, project of the United States Veterans' Administration, at
    Castle Point, New York.

### Jurisdiction

3.  Jurisdiction of this court over Plaintiff's First Cause of Action is founded upon
    the Miller Act, sections 3131 and 3133 of Title 40 of the United States Code.

4.  Plaintiff CAI's second cause of action for breach of contract is within this Court's
    supplemental jurisdiction pursuant to 28 U.S.C.A. 1367(a).

## *Parties*

5.  CAI is a corporation duly organized under the laws of the State of New York with its principal offices in Thornwood, County of Westchester, and State of New York.

6.  CAI brings this action, with respect to the first cause of action, in the name of the United States for the use and benefit of CAI, as required by United States Code §3133(b)(3)(A).

7.  CAI brings this action in its own name for the second cause of action, which seeks damages for contract breach.

8.  Upon information and belief, defendant ThyssenKrupp is a corporation formed under the laws of the State of Delaware.

9.  Upon information and belief, defendant ThyssenKrupp has filed with the New York State Secretary of State as a Foreign Business Corporation.

10. Upon information and belief, defendant Federal Insurance Company is a corporation formed under the laws of the State of Indiana.

11. Upon information and belief, defendant Federal Insurance Company is authorized to conduct business in the State of New York.

12. Upon information and belief, defendant Federal Insurance Company is a member of the Chubb Group of Insurance Companies.

## *Background*

13. ThyssenKrupp engaged the services of CAI to perform work, labor, and services, and to provide materials for a project known to said defendant as the United States Veterans' Administration Hudson Valley Health Care, building 15E, 17, 18, 19 at Castle Point, NY 12511 ["Castle Point Project"] in Dutchess County, NY.

14. To so engage CAI, ThyssenKrupp prepared a Purchase Order dated March 22, 2005 for Job Number 110 BT 3665-8 ["Purchase Order"].

15. By its terms, the Purchase Order was issued in accordance with the terms of CAI's quotation dated January 8, 2004.

16. Copies of the Purchase Order and the CAI quotation dated January 8, 2004, including its Assumptions, Qualification & Exclusions, are annexed hereto as Exhibit A.

17.     CAI accepted the Purchase Order by signing, as seller, on March 29, 2005.

18.     Thereafter the parties agreed upon a number of Contract Adjustments to the Purchase Order.

19.     In accordance with 40 U.S.C.A. §3133, ThyssenKrupp, as principal, and Federal Insurance company as surety, on May 26, 2004, executed a standard government form of Payment Bond, under number 8193-53-57, to the United States of America.   A copy of the Payment Bond is annexed hereto as Exhibit B.

20.     In said Payment Bond, ThyssenKrupp, as principal, and Federal Insurance Company, as surety, bound themselves jointly and severally in the sum of $999,000.00 with the condition that if the principal promptly made payment to all persons supplying labor and material in the prosecution of the work provided in said contract, then the obligation to be void and, otherwise, the obligation was to remain in full force and effect.

21.     Said Payment Bond secured payment of contractors such as CAI by or on behalf of ThyssenKrupp with respect the Castle Point Project.

22.     ThyssenKrupp has failed and neglected to pay CAI the sum of $60,032.64 in accordance with ThyssenKrupp's subcontract with CAI. This sum represents the total due when combining the outstanding applications for payment and retainage owed as is set forth more fully in CAI's Second Cause of Action herein.

23.     The date on which CAI last provided work, labor, services, and materials, was July 16, 2007. A period of more than 90 days has elapsed since such date, and CAI has not been paid in full for the work, labor, services, and materials provided.

24.     All conditions precedent for the bringing and maintenance of this action have been performed or have occurred.

*First Cause of Action*

25.     CAI notified the Veteran's Administration on October 3, 2007 that ThyssenKrupp had breached its contract with CAI.  A copy of the October 3, 2007 letter is annexed hereto as Exhibit C.

26.     CAI made a claim against the Payment Bond in the amount of $60,032.64 by oral communication with Sharon at Federal Insurance Company ["Federal"] on

October 17, 2007 during which Sharon assigned Claim Number 040507105042 to CAI's claim.

27. By letter dated October 31, 2007 CAI's attorneys sent a letter to Federal Insurance Company confirming the making of the claim in the amount of $60,032.64. A copy of the October 31, 2007 letter is annexed hereto as Exhibit D.

28. On November 14, 2007, CAI's attorneys sent to Federal Insurance Company a duplicate of the October 31, 2007 letter and its enclosures.

29. On December 12, 2007, CAI's attorneys sent to Federal Insurance Company a further letter enclosing the Purchase Order and the January 4, 2004 letter from CAI to ThyssenKrupp as well as all CAI's payment requisitions.

30. Federal Insurance Company has failed to pay CAI any of the amounts CAI has demanded.

31. As a result of the foregoing, Federal Insurance Company owes CAI the amount of $60,032.64 plus interest from October 17, 2007.

### *Second Cause of Action*

32. Pursuant to the terms of the Purchase Order, CAI provided work, labor, services and materials to ThyssenKrupp for the Castle Point Project.

33. CAI performed all its responsibilities under the Purchase Order up to the point of ThyssenKrupp's breach of the Contract by its failure to pay CAI for its work, labor, services, and materials.

34. The last date on which CAI provided said work, labor, services, and materials for the Castle Point Project was July 16, 2007.

35. By Application and Certification for Payment Number 7, dated May 22, 2007, CAI sought from ThyssenKrupp payment in the amount of $29,298.00. A copy of said Application No.7 is annexed hereto as Exhibit E.

36. By Application and Certification for Payment Number 8, dated June 25, 2007, CAI sought from ThyssenKrupp payment in the amount of $11,426.07. A copy of said Application No.8 is annexed hereto as Exhibit F.

37.  ThyssenKrupp has failed to pay CAI for Application No. 7.

38.  ThyssenKrupp has failed to pay CAI for Application No. 8.

39.  ThyssenKrupp continues under the Purchase Order to hold retainage in the amount of $19,308.57.

40.  CAI demanded from ThyssenKrupp that it pay CAI $60,032.64, as follows:

| | |
|---|---|
| Application #7 | $29,298.00 |
| Application #8 | $11,426.07 |
| Retainage | $19,308.57 |
| TOTAL | $60,032.64. |

41.  ThyssenKrupp has failed to pay CAI the amount of $60,032.64 in whole or in part.

42.  As a result of the foregoing, ThyssenKrupp has breached its contract with CAI.

43.  As a result of the foregoing, ThyssenKrupp owes CAI $60,032.64 plus interest from July 16, 2007.

WHEREFORE, Plaintiffs demand judgment:

A)  on the First Cause of Action in favor the United States of America for the use and benefit of Construction Associates, Inc. against Federal Insurance Company in the amount of $60,032.64 plus interest from October 17, 2007;

B)  on the Second Cause of Action in favor of Construction Associates, Inc. against ThyssenKrupp Elevator Corporation in the amount of $60,032.64 plus interest from July 16, 2007;

C)  attorney's fees, costs, disbursements against both defendants; and

D)  whatever additional relief this Honorable Court deems appropriate.

Dated: Bronxville, NY
       July 14, 2008

NOBILE, MAGARIAN & DiSALVO, LLP

By:
      Joseph A. DiSalvo (JD1156)
Office and Post Office Address
111 Kraft Avenue
Bronxville, New York 10708
914-337-6300

S:\CAI\TKE\complaint draft3.wpd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

UNITED STATES OF AMERICA for the use and benefit
of CONSTRUCTION ASSOCIATES, INC., pursuant                              CIVIL ACTION
to 40 U.S.C.A. §3133 and CONSTRUCTION                                   FILE NO.:
ASSOCIATES, INC.

                                    Plaintiffs,                         **VERIFICATION**

        - against -

THYSSENKRUPP ELEVATOR CORPORATION,
and FEDERAL INSURANCE COMPANY,

                                    Defendants.
-----------------------------------------------------------------x

STATE OF NEW YORK              )
COUNTY OF WESTCHESTER          )        SS:


        Christopher Orifici being duly sworn, deposes and says:


        I am the President of Construction Associates, Inc., one of the above plaintiffs in this action.

        I have read the annexed Complaint, know the contents thereof and the same are true to my

knowledge, except those matters therein which are stated to be alleged on information and belief and, as

to those matters, I believe them to be true.


                                                CHRISTOPHER ORIFICI,   President


Sworn to before me this
___14th___ day of July, 2008.


Notary Public

ENID K. MORRONE
Notary Public, State of New York
No. 01MO6053397
Qualified in Westchester County
Commission Expires January 8, 20 11


S:\CAI\TKE\VERIFICATION - CORPORATE.WPD

# ThyssenKrupp Elevator

PURCHASE ORDER

No. B- 818629

PURCHASE ORDER NUMBER MUST BE SHOWN O
EACH PACKAGE, INVOICE AND ALL CORRESPONDEN

THYSSENKRUPP ELEVATOR
500 EXECUTIVE BOULEVARD
ELMSFORD, NY 10523

PURCHASE ORDER DATE

March 22, 2005

**VENDOR**

Construction Associates, Inc.
677 Commerce Street
Thornwood, NY 10594

Attn: Mr. Chris Orifici

**SHIP TO**

Jobsite

| REQUIRED DELIVERY DATE | ACCT NO. | JOB NO. | CODE NO. | JOB NAME & ADDRESS |
|---|---|---|---|---|
| per schedule | 145 | 110 BT 36658 | 51 | V.A. Hudson Valley Health Care |

| TERMS | F.O.B. | SHIP VIA | Building 15E, 17, 18, 19 |
|---|---|---|---|
| Net 50 | N/A | N/A | Castle Point, NY 12511 |

PLEASE FURNISH US IN ACCORDANCE WITH THE CONDITIONS SPECIFIED IN THIS ORDER, INCLUDING THE REVERSE SIDE HEREOF,
AND ALL OTHER ATTACHMENTS AND ADDENDA HERETO, THE FOLLOWING:

| ITEM NO. | QUANTITY | CODE NO. | DESCRIPTION | PRICE |
|---|---|---|---|---|
| | | | In accordance with your quotation dated January 8, 2004, provide all non-elevator related work in accordance with the architectural plans and specifications for the above referenced project. Provide workers compensation, public liability, and property damage insurance in accordance with the project General Conditions. Provide all billing and paperwork associated with performing work at the V.A. work includes providing all debris disposal, O.S.H.A. requirements, barricades, cutting of walls for entrances, re-building and patching walls, electrical, HVAC, and fire alarm work. | |
| | | | Payment from the Owner shall be required as a condition of payment to Construction Associates. | |
| | | | **TOTAL PURCHASE ORDER - $400,000.00** | |
| | | | Payments shall be progress payments based on labor & materials spent each month as approved by the V.A. 10% retainage will be held until released by the Owner. | |

SELLER AND USE TAX STATUS:

EXEMPT - FOR RESALE - SALES TAX REG. NO. _____ FOR THE STATE OF _____

EXEMPT - FOR INCORPORATION INTO THE TAX EXEMPT PROJECT IDENTIFIED ABOVE

ADD SALES OR USE TAX IF APPLICABLE TO INVOICE AS A SEPARATE ITEM

SUBCONTRACT - TAX OBLIGATION IF ANY, IS SELLER'S AND IS INCLUDED IN THE PRICE STATED

SHIPPING POINT _____

DATE PROMISED _____

ROUTING _____

ACCEPTED _____
SELLER

DATE 3/28/05

**ThyssenKrupp Elevator**

BY _____
Richard Kearney

BY Construction Associates

**PRESIDENT**

## ACKNOWLEDGEMENT - COMPLETE AND RETURN AT ONCE

## TERMS AND CONDITIONS

**1. QUALITY:** Any manufacturing or other specification referred to in this order is hereby made a part thereof, as if fully set forth herein. All goods, materials and articles ordered hereunder will be accepted subject to Buyer's inspection within a reasonable time after arrival at destination.

**2. SHIPPING and DELIVERY:** Time is of the essence. Except as herein otherwise provided, failure to deliver the specified commodities of the quality, in the quantity and within the time specified shall, at Buyer's option, relieve Buyer of any obligation to accept delivery of and pay for such commodities as well as any thereafter to be delivered hereunder, without prejudice to Buyer's rights to claim damages or to inforce any other remedy provided by law. Upon such failure to deliver, unless deferred delivery is arranged for in writing, Buyer may buy elsewhere, or change shipping instructions to speed up delivery and charge Seller with any loss incurred. Any failure by Buyer to exercise this option with respect to any commodities shipped hereunder shall not constitute a waiver of any of Buyer's rights in respect to commodities thereafter to be delivered hereunder.

**3. CONTAINERS:** All returnable containers shall be billed on separate memorandum invoice, subject to return in good condition as promptly as possible, transportation charges collect.

**4. PACKING and CARTAGE:** A packing list, bearing shipper's name and address, shall be placed in each box, container or package. No charge will be allowed for packing, boxing, or cartage, unless so stipulated herein, but damage to any commodities not packed to insure proper protection to same, if accepted by Buyer, will be charged to Seller.

**5. PRICE and DISCOUNTS:** This order shall not be filled at higher prices than specified herein. If price is omitted, the order shall be billed at price last quoted or paid, or at the prevailing market price, whichever is lower. Send invoice in triplicate with bill of lading to this office on day of shipment. If material on invoices subject to cash discount is not received within the allotted period, same will be paid as soon as material is received and checked with invoice, and discount taken as per terms on invoice. If you desire to take freight into consideration before computing cash discount, your invoice should so state and the amount of freight must be shown in the deduction taken from the full amount of the invoice. Make separate invoice for each order and show on same the cash discount allowed and the point from which shipment was made. Invoice must show whether freight is paid or not. When freight charges are included in the quoted price, these charges must be separately stated on the invoice.

**6. ASSIGNMENT:** No assignment of this order or of monies due or to become due hereunder shall be made without Buyer's prior written consent.

**7. INSOLVENCY:** Buyer may cancel this order if Seller files a voluntary petition under any Federal or State Bankruptcy Act, or is adjudicated a bankrupt or if Seller becomes insolvent or commits an act of bankruptcy.

**8. PATENTS:** Seller agrees to defend, indemnify, and save the Buyer and its customers harmless against all suits, claims and demands for actual or alleged infringements of any patent, trade secret or copyright arising from the use of the goods, materials, articles and services or work performed under this order.

**9. WARRANTIES:** Seller warrants that the goods, materials, articles and services or work performed herein will be free from defects in material and workmanship and will conform to the specifications contained or referred to herein and/or to samples, drawings, designs or other specifications approved or adopted by Buyer, and unless otherwise specified herein, to recognize the commercial standards of quality and function for the kind of goods, materials, articles, services or work performed hereunder. Such goods, materials, articles, services or work performed shall also be subject to all statutory warranties and all express or implied warranties created by acts or statements of Seller. Seller shall, at his own expense, repair or replace, as Buyer may direct, any defective or deficient goods, materials, articles, services, or work performed, immediately on notice from Buyer, within one year from date of acceptance of the elevator installation.

**10. LIABILITY FOR DAMAGES:** Seller agrees to indemnify, save harmless and defend Buyer, his subsidiaries and affiliates from and against any demand, liability, cost or expense (including reasonable attorneys' fees) arising from death or injury to any person or persons or damage to property arising out of or in connection with any breach of warranty or other default of Seller in the manufacture, shipment or sale of its products or services or the Seller's performance of this contract. Whenever Seller shall by virtue of this contract, have Buyer's property in his possession, Seller shall be deemed an insurer thereof, and shall be responsible for its safe return to Buyer.

**11. INSURANCE:** The Seller shall carry, at its own expense, insurance coverage satisfactory to the Buyer. Unless otherwise specified herein or by project terms and conditions which are made a part of this order by reference, the following insurance, with minimum limits shown, is required. Certificates of such coverage must be furnished to Buyer before any work is started at a job site or in, on, or about Buyer's premises, and shall be endorsed to provide that Buyer will receive at least thirty days written notice prior to cancellation of the insurance or material change in its provisions:

WORKMAN'S COMPENSATION . . . . . . . . . . . . . . conforming to laws of the State in which the work is performed.

COMPREHENSIVE GENERAL LIABILITY (including Products Liability Coverage sufficient to protect Buyer and Buyer's successor in interest to the goods against liability in accordance with paragraph 10.) – Bodily injury– $500,000 per person– $1,000,000 per occurrence. Property Damage–$500,000 per occurrence.

AUTOMOBILE LIABILITY . . . . . . . . . . . . . . Bodily Injury . . . . . . . . . . . $500,000 per person, $1,000,000 per occurrence. Property Damage–$500,000 per occurrence.

**12. TAXES and LICENSES:** Unless otherwise provided herein, prices shown on this order are deemed to include all taxes not expressly imposed by law on the Buyer or the materials of the work to be performed hereunder. The Seller shall report and pay all royalties, permits and licenses; all excise, privilege occupational, sales or use taxes, all Social Security taxes, unemployment insurance, union fringe and welfare benefits and all other Federal, State, and Local taxes or charges of every nature applicable to the performance of this contract. The Seller agrees to indemnify and save the Buyer harmless from and against all liability for such taxes or aforementioned charges.

**13. LAWS and ORDINANCES:** In the performance of this contract, the Seller shall comply with all Federal, State, and Local laws, ordinances, rules and regulations applicable thereto. Seller certifies to Buyer that the materials being purchased by Buyer hereunder were produced in compliance with all applicable requirements of the Fair Labor Standards Act of 1938, as amended, including the requirements as to records. The Equal Employment Opportunity clause prescribed by Executive Orders #11246 of September 24, 1965, and #11375 as amended, and regulations issued pursuant thereto by the office of Federal Contract Compliance, are incorporated herein, unless this transaction is exempt under applicable regulations and Seller hereby makes to Buyer the certifications, if any, required thereby. The Equal Employment Opportunity provisions of 41 C.F.R. sections 60, 250, and 741 are hereby incorporated by reference, if applicable.

**14. TITLE:** Title to, and risk of loss of, materials purchased under this Order shall rest upon Seller until such materials are delivered at the F.O.B. point specified in this Order, or if no such point is given, then when they are delivered to a public carrier consigned to Buyer, or are delivered to Buyer, whichever delivery shall occur first. However, if materials purchased are of an explosive, inflammable, toxic or otherwise dangerous nature, Seller shall hold Buyer harmless against any claims asserted against Buyer on account of any personal and property damages caused by such materials, or by the transportation thereof, prior to the completion of unloading at Buyer's plant or warehouse.

**15. DESIGNS, TOOLS, DIES, etc.:** (a) If the materials hereunder are to be produced by Seller in accordance with designs, drawing or blueprints furnished by Buyer, Seller shall return the same to Buyer at latter's request upon completion or cancellation of this Order, and they shall not be used by Seller in the production of materials for any third party without Buyer's written consent.

(b) Unless otherwise agreed herein, Seller, at its expense, shall supply all materials, equipment, tools, and facilities, required to perform this Order. Any material, equipment, tools or other property furnished by Buyer or specifically paid for by it shall be Buyer's property. Any such property shall be used only in filling orders from Buyer and may on demand be removed by Buyer without charge. Seller shall use such property at its own risk and shall be responsible for all loss of or damage to the same while in Seller's custody. Seller shall, at its expense, store and maintain all such property in good condition and repair. Buyer makes no warranties of any nature with respect to any property it may furnish.

**16. CONTRACT:** (a) This Purchase Order constitutes the entire contract between the parties. Acceptance is limited to the terms hereof and no revision of the Order or any of its terms and conditions, nor any additions thereto, shall be effective (whether or not in Seller's acknowledgement or other form) unless agreed to in writing by Buyer's authorized representative. Shipment of any of the materials ordered or performance of any work hereunder constitutes acceptance of all the terms and conditions hereof whether or not Seller has acknowledged this Order. (b) In the event of any inconsistency between printed terms and conditions and the face hereof or any supplemental conditions attached hereto, the face of such supplemental conditions shall prevail. (c) Buyer shall have the right to make changes within the general scope of this Order, but no additional charge will be allowed unless authorized in writing by Buyer. If such changes affect the delivery schedule or the amount to be paid by Buyer, Seller shall notify Buyer immediately and negotiate an adjustment.

**Construction Associates**

REGISTER
JAN 9 2004
THYSSEN KRUPP ELEVATOR

CAI Proposal # 24012

GENERAL CONTRACTING & CONSTRUCTION MANAGEMENT SERVICES

January 8, 2004

Mr. Richard Kearney
ThyssenKrupp Elevator
500 Executive Boulevard
Elmsford, New York 10523

RE:    Elevator Modernization
       Castle Point VA Hospital

Dear Mr. Kearney:

We take pleasure in submitting our estimate to furnish all labor, equipment and materials to complete all non Elevator related work for the above referenced project. This proposal assumes the design documents describe the entire scope of the work and that the plans and specifications comply with all local and state building codes

Our proposal is based on the following contract documents:

    Drawings:TS-1, S-1, D-1, C-1, C-2, C-3, C-4, C-5, C-6; and
    Specifications: Dated August 21, 2003

All work will be performed by skilled mechanics for the lump sum cost of Four Hundred Thousand Dollars and No Cents ($400,000.00). We assume a tax exempt certificate will be provided for this work. If not, sales tax will be added on to the above price.

Please see the attached project Bid Form and Clarification & Exclusion List to analyze our bid.

We have assumed, as a part of our proposal that the Designer and the Owner have done a complete survey of the existing conditions and the design documents describe fully the scope of the work and required work to complete relocation and/or rerouting of the existing work or conditions interfering with the new work.

We understand that it is not the intent of the specifications to be exclusionary, and we have not interpreted them as such. We have assumed that alternate manufacturers of "equal" products will be allowed regardless of any indications by the Contract Documents to the contrary. Any items referenced by specifications, unless otherwise noted by this proposal, are included only to the extent shown by drawings and any items referenced by drawings where no specification is provided, the type and quality will be at the sole discretion of the contractor.

We are fully covered by WORKERS COMPENSATION, PUBLIC LIABILITY and PROPERTY DAMAGE INSURANCE. Additional coverage or limits beyond our basic policy, bonds, etc., will be provided at cost.



**Construction Associates**

Proposal #24012
VA Castle Point Elevator Modernization
Page 2 of 3

The site shall be kept free of all surplus waste materials and rubbish resulting from work at all times.  Upon completion of work, all excess materials shall be removed from the site and we shall leave the premises in a neat and orderly condition.  Workers shall fully comply with all OSHA regulations at all times.

Progress payments for the project, based on this proposal, are due 30 days after receipt of the monthly invoice.  Payments due and unpaid shall bear interest from the date payment is due at a 1.5% rate per month.

We look forward to working with you on this project.  Feel free to call me if you should have any questions regarding this proposal.

Sincerely,
Construction Associates, Inc.

David J Orifici
Senior Project Executive


**Construction Associates**

Proposal #24012
VA Castle Point Elevator Modernization
Page 3 of 3

## Assumptions, Qualifications & Exclusions:

- The general assumption in the preparation of this bid is that the design documents describe the entire scope of the work.
- We understand that it is not the intent of the specifications to be exclusionary and we have not interpreted them as such. We have assumed that alternate manufacturers of "equal" products will be allowed regardless of any indications by the Contract Documents to the contrary.
- Any items referenced by specifications, unless otherwise noted by this proposal, are included only to the extent shown by drawings.
- Any items referenced by drawings where no specification is provided will be provided at the sole discretion of the contractor.
- We exclude hazardous materials handling, removal, and containment.
- We exclude bonds and associated premium costs.
- We exclude permits, permits filing and associated fees.
- We exclude testing, inspection or certification fees.
- We exclude premium time.
- We exclude costs associated with survey, coordination, relocation, and/or rerouting of existing work, or conditions interfering with the new work unless specifically detailed by drawings.
- We assume that the plans and specifications comply with all local and state building codes. If a conflict exists, we exclude any and all costs associated with compliance.
- We exclude any and all work to correct existing code violations unless specifically detailed by drawings.
- We exclude any work resulting from concealed conditions and/or field conditions unless actually detailed by drawings.
- We exclude sales tax and assume a Tax Exempt Certificate will be provided by the Owner.
- This proposal is based on 30 day payment terms.
- We have assumed free use of elevator at all construction times.
- The assumptions and clarifications listed herein are not organized in any specific order and are not intended to limit their extent.

Bond # 8193-53-57

SF-25A (1/90)

| PAYMENT BOND<br>(See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract)<br>May 26, 2004 | FORM APPROVED<br>OMB NO.<br>9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, DC 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, DC 20503.

| PRINCIPAL (Legal name and business address)<br><br>ThyssenKrupp Elevator Corporation<br>125 Moen Avenue<br>Cranford, New Jersey 07016 | TYPE OF ORGANIZATION ("X" one)<br><br>[ ] INDIVIDUAL            [ ] PARTNERSHIP<br><br>[ ] JOINT VENTURE        [X] CORPORATION<br><br>STATE OF INCORPORATION |
|---|---|

| SURETY(IES) (Name(s) and business address(es))<br><br>Federal Insurance Company<br>15 Mountain View Road<br>Warren, New Jersey 07059 | PENAL SUM OF BOND |  |  |
|---|---|---|---|
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENT(S) |

| PENAL SUM OF BOND |||||
|---|---|---|---|---|
| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENT(S) |
|  | 999 | 000 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| April 13, 2004 | V10N3C-280 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this bid bond and affixed their seals on the above date.



| ThyssenKrupp Elevator Corporation | PRINCIPAL |  |  |
|---|---|---|---|
| Signature(s) | 1. _____ X(Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| Name(s) & Title(s) (typed) | 1. JOSEPH PANTALEO<br>CONTRACT ANALYST | 2. | 3. | |

| | INDIVIDUAL SURETY(IES) |  |  |
|---|---|---|---|
| Signature(s) | 1. (Seal) | 2. (Seal) | (Seal) |
| Name(s) (Typed) | 1. | 2. | |

| NSN 7540-01-152-8061<br>Previous edition not usable | EXPIRATION DATE 9/30/95 | 25-205 | STANDARD FORM 25A (Rev. 1-90)<br>Prescribed by GSA - FAR (48 CFR) 53.228(a) |
|---|---|---|---|

CORPORATE SURETY(IES)                                                          SF-35A (1/90)

| | | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|---|
| S U R E T Y A | Name & Address | FEDERAL INSURANCE COMPANY 15 Mountain View Road Warren, New Jersey 07059 | IN | $ 401,727,000.00 | Corporate Seal |
| | Signature(s) | 1. *[signature]* | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. Candace T. Stevenson, Attorney-In-Fact | 2. | | |
| S U R E T Y B | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| S U R E T Y C | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| S U R E T Y D | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| S U R E T Y E | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| S U R E T Y F | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| S U R E T Y G | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |

**STATE OF ILLINOIS**
**COUNTY OF COOK**

On this _____26th_____ day of _____May_____, 2004, before me
personally came_____Candace T. Stevenson_____to me
known, who being by so duly sworn, did depose and say: that he/she is

Attorney-In-Fact of_____Federal Insurance Company_____

the Corporation described in and which executed the foregoing
instrument; that he/she knows the seal of said Corporation; that the seal
affixed to said instrument is such corporate seal; that is was so affixed by
authority granted to him/her in accordance with the By-Laws of the said
Corporation, and that he/she signed his/her name thereto by like
authority.

_____
**NOTARY PUBLIC**

My Commission Expires

December 15, 2007

"OFFICIAL SEAL"
ADRIENNE C. STEVENSON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES DECEMBER 15, 2007

This Notice pertains to the ....lowing Surety Bond issued by a member of ....... Chubb Group of Insurance Companies, including Federal Insurance Company, Vigilant Insurance Company and Pacific Indemnity Company.

Bond Number:    81935357
                May 26, 2004

### POLICYHOLDER DISCLOSURE NOTICE
### TERRORISM RISK INSURANCE ACT OF 2002
### (POLICIES WITH NO TERRORISM EXCLUSION OR SUBLIMIT AND NO PREMIUM CHARGE)

You are hereby notified that pursuant to the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, we are making available to you coverage for losses arising out of certain acts of international terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Insurance for acts of terrorism is already included in the captioned Surety Bond.

You should know that, effective November 26, 2002, any losses caused by acts of terrorism covered by your policy will be partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States of America pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. The portion of your annual premium that is attributable to coverage for such acts of terrorism is zero, because we could not distinguish (and separately charge for) acts of terrorism from other causes of loss when we calculated your premium.

If you have any questions about this notice, please contact your agent or broker.





| **Chubb** **Surety** | **POWER OF ATTORNEY** | **Federal Insurance Company** **Vigilant Insurance Company** **Pacific Indemnity Company** | **Attn.: Surety Department** **15 Mountain View Road** **Warren, NJ 07059** |
|---|---|---|---|

Know All by These Presents, That FEDERAL INSURANCE COMPANY, an Indiana corporation, VIGILANT INSURANCE COMPANY, a New York corporation, and PACIFIC INDEMNITY COMPANY, a Wisconsin corporation, do each hereby constitute and appoint Samuel L. Ware, Jr.,

William T. Krumm, John K. Johnson, Patricia M. Stein, Adrienne C. Stevenson and Candace T. Stevenson of Chicago, Illinois ————

each as their true and lawful Attorney-in-Fact to execute under such designation in their names and to affix their corporate seals to and deliver for and on their behalf as surety thereon or otherwise, bonds and undertakings and other writings obligatory in the nature thereof (other than bail bonds) given or executed in the course of business, and any instruments amending or altering the same, and consents to the modification or alteration of any instrument referred to in said bonds or obligations.

In Witness Whereof, said FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY have each executed and attested these presents and affixed their corporate seals on this 20th day of February , 2004

_Kenneth C. Wendel_
Kenneth C. Wendel, Assistant Secretary

_Frank E. Robertson_
Frank E. Robertson, Vice President

STATE OF NEW JERSEY} ss.
County of Somerset

On this 20th day of February 2004 , before me, a Notary Public of New Jersey, personally came Kenneth C. Wendel, to me known to be Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY, the companies which executed the foregoing Power of Attorney, and the said Kenneth C. Wendel being by me duly sworn, did depose and say that he is Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY and knows the corporate seals thereof, that the seals affixed to the foregoing Power of Attorney are such corporate seals and were thereto affixed by authority of the By-Laws of said Companies; and that he signed said Power of Attorney as Assistant Secretary of said Companies by like authority; and that he is acquainted with Frank E. Robertson, and knows him to be Vice President of said Companies; and that the signature of Frank E. Robertson, subscribed to said Power of Attorney is in the genuine handwriting of Frank E. Robertson, and was thereto subscribed by authority of said By-Laws and in deponent's presence.



Notarial Seal

MARIA CALINI
Notary Public, State of New Jersey
No. 2163236
Commission Expires Nov. 16, 2005

_Maria Calini_
Notary Public

## CERTIFICATION

Extract from the By-Laws of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY:

"All powers of attorney for and on behalf of the Company may and shall be executed in the name and on behalf of the Company, either by the Chairman or the President or a Vice President or an Assistant Vice President, jointly with the Secretary or an Assistant Secretary, under their respective designations. The signature of such officers may be engraved, printed or lithographed. The signature of each of the following officers: Chairman, President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is attached."

I, Kenneth C. Wendel, Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY (the "Companies") do hereby certify that

(i)   the foregoing extract of the By-Laws of the Companies is true and correct,

(ii)  the Companies are duly licensed and authorized to transact surety business in all 50 of the United States of America and the District of Columbia and are authorized by the U. S. Treasury Department; further, Federal and Vigilant are licensed in Puerto Rico and the U. S. Virgin Islands, and Federal is licensed in American Samoa, Guam, and each of the Provinces of Canada except Prince Edward Island; and

(iii) the foregoing Power of Attorney is true, correct and in full force and effect.

Given under my hand and seals of said Companies at Warren, NJ this 26th day of May , 2004

  

_Kenneth C. Wendel_
Kenneth C. Wendel, Assistant Secretary

IN THE EVENT YOU WISH TO NOTIFY US OF A CLAIM, VERIFY THE AUTHENTICITY OF THIS BOND OR NOTIFY US OF ANY OTHER MATTER, PLEASE CONTACT US AT ADDRESS LISTED ABOVE, OR BY
Telephone (908) 903-3485        Fax (908) 903-3656        e-mail: surety@chubb.com

15-10-0225B (Ed. 4-99) CONSENT

# NOBILE, MAGARIAN & DiSALVO, LLP

## COUNSELLORS AT LAW

### 111 KRAFT AVENUE
### BRONXVILLE, N.Y. 10708
#### (914) 337-6300

RALPH R. NOBILE*
JOSEPH A. DiSALVO

EDWARD J. MITCHELL*

OF COUNSEL
LOUIS J. MAGGIOTTO**

COUNSEL
NAZARETH MAGARIAN
(1929-2001)

DEBRA A. ARENA*

*ALSO ADMITTED IN CONNECTICUT
**ALSO ADMITTED IN NEW JERSEY

FACSIMILE (914) 337-6913

October 3, 2007

Sent by First Class Mail
and by email to
Kathleen.Johns2@va.gov

Kathleen A. Johns, LCSW
Supervisor, Construction & Leasing, 9B-62
VISN 3 Network Acquisition & Logistics
130 West Kingsbridge Road
Bronx, NY 10468

> Re:   **VA Hudson Valley Health Care - Elevator Modernization**
> **Building 15E, 17, 18, 19, Castle Point Campus**
> **Project No. 620-00-126**
> **Contract No. V10N3C-280 with ThyssenKrupp Elevator Corp.**

Dear Ms. Johns:

This office represents Construction Associates, Inc. ["CAI"], a subcontractor on the above project.

We write to notify you that ThyssenKrupp Elevator Corp. ["TKE"] has breached its contract with CAI on the above-referenced contract and has failed to make payment to CAI for all work completed from January 25, 2007 to the present.

Currently, two applications for payment remain unpaid: Application #7, for the period ending 4/30/07, in the amount of $29,298; and Application #8, for the period ending 6/30/07, in the amount of $11,426.07.

In addition, TKE holds retainage of $19,308.57.

NOBILE, MAGARIAN & DiSALVO, LLP

Kathleen A. Johns, LCSW
October 3, 2007
Page 2

The total that TKE owes CAI, therefore, is    $29,298.00
     $11,426.07
     <u>$19,308.57</u>
     $60,032.64.

Efforts to resolve this matter have not proven fruitful. CAI is prepared to meet and discuss matters, and has so informed TKE, but CAI still awaits the opportunity to meet. In addition, CAI is prepared to return and complete the job. However, TKE's breach of the contract and its failure to make the payments due has prevented that from occurring. Therefore, we determined that it was appropriate to inform your office of this situation.

Finally, please provide this office with a copy of the Performance and Payment Bond that was supplied by TKE for this project.

Very truly yours,
NOBILE, MAGARIAN & DiSALVO, LLP

By _____
JOSEPH A. DiSALVO

cc:     Alan Link
      Contracting Specialist
      Dept. of Veterans Affairs
      130 West Kingsbridge Road
      Bronx, NY 10468
      [By first class mail and my email to Alan.Link@va.gov]

      Ken Palmer
      VA Hospital
      Rt. 9D
      Castle Point, NY 12511
      [By first class mail and by email to Ken.Palmer@va.gov]

      Robert Feldman, Esq.
      Assistant General Counsel
      ThyssenKrupp Elevators Corp.
      5701 Pine Island Road; Suite 390
      Tamarac, FL 33321
      [By first class mail and by email to ROBERT.FELDMAN@THYSSENKRUPP.COM]

S:\CAI\TKE va notice ltr.doc

# NOBILE, MAGARIAN & DiSALVO, LLP

## COUNSELLORS AT LAW

### 111 KRAFT AVENUE
### BRONXVILLE, N.Y. 10708
### (914) 337-6300

RALPH R. NOBILE*
JOSEPH A. DiSALVO
—
EDWARD J. MITCHELL*
—
OF COUNSEL
LOUIS J. MAGGIOTTO**

COUNSEL
NAZARETH MAGARIAN
(1929-2001)
—
DEBRA A. ARENA*

*ALSO ADMITTED IN CONNECTICUT
**ALSO ADMITTED IN NEW JERSEY

FACSIMILE (914) 337-6913

October 31, 2007

**Sent by facsimile
to (908) 903-3656
and by First Class Mail**

Federal Insurance Company
        Attn:   Surety Dept.
15 Mountain View Road
Warren, NJ 07059

Re:     **Claim Number:**       **040507105042**
        **Claimant:**            **Construction Associates, Inc.**
        **Bonded Principal:**    **ThyssenKrupp Elevator Corporation**
        **Surety:**              **Federal Insurance Company**
        **Policy Number:**       **82031785**
        **Contract Number:**     **V10N3C-280 [Veteran's Administration]**
        **Project Number:**      **620-00-126**
        **Project:**             **VA Hudson Valley Health Care - Elevator
                                 Modernization Building 15E, 17, 18, 19,
                                 Castle Point Campus**

Dear Sir or Madam:

        We send this letter on behalf of our client, Construction Associates, Inc. ["CAI"] to confirm that CAI made a claim against the Payment Bond above-referenced on October 17, 2007.

        On October 17, 2007, I spoke with Sharon at Federal Insurance Company and informed her that CAI had not been paid by ThyssenKrupp Elevator Corporation on two payment requisitions.  I reported that the following amounts are due CAI on those

NOBILE, MAGARIAN & DiSALVO, LLP

Federal Insurance Company
    Attn:  Surety Dept.
October 31, 2007
Page 2 of 2

requisitions [for all work completed from January 25, 2007 to the present] and on the retainage that ThyssenKrupp continued to hold:

| | |
|---|---|
| Application #7, for the period ending 4/30/07 | $29,298.00 |
| Application #8, for the period ending 6/30/07 | $11,426.07 |
| Retainage | $19,308.57 |
| TOTAL | $60,032.64. |

    During the telephone call I also informed Federal Insurance of the contact information for ThyssenKrupp, CAI, and this firm.  I was informed that the bond loss work group would be handling this matter.  Sharon informed me of the Claim Number assigned to the claim: 040507105042.  Since the telephone call, Federal Insurance Company has not contacted CAI or this office.

    If further information is required, please do not hesitate to contact this office. Thank you for your attention to this matter.

            Very truly yours,
            NOBILE, MAGARIAN & DiSALVO, LLP

            By:
                JOSEPH A. DiSALVO

cc:    Construction Associates, Inc.
        Attention:  Chris Orifici, Pres.

S:\cai\tke\federal ins co conf ltr.doc

TRANSMISSION VERIFICATION REPORT

TIME    : 10/31/2007 09:11
NAME    : NMD LAW
FAX     : 9143376913
TEL     : 9143376300
SER.#   : 000H6J465450

DATE,TIME                    10/31  09:10
FAX NO./NAME                 919089033656
DURATION                     00:00:34
PAGE(S)                      02
RESULT                       OK
MODE                         STANDARD
                             ECM

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702

(Instructions on reverse side) PAGE 1 OF 2 PAGES

TO: (CONSTRUCTION MANAGER):
ThyssenKrupp Elevator Corp.
500 Executive Blvd.
Elmsford, NY 10523

FROM (CONTRACTOR):
Construction Associates Inc.
677 Commerce Street
Thornwood, NY 10594

CONTRACTOR FOR:

PROJECT:
VA Castle Point
Building 15E, 17, 18, 19

VIA ARCHITECT:

APPLICATION NO.: 7
PERIOD TO: 4/30/2007
PROJECT NOS.: 110ST 3665-8
CONTRACT DATE: 3/22/2005

Distribution to:
___ CONST. MNGR.
___ ARCHITECT
___ CONTRACTOR

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM | $ | 400,000.00 |
| 2. Net Change by Change Orders | | -803.61 |
| 3. CONTRACT SUM TO DATE (Line 1 + 2) | | 399,396.39 |
| 4. TOTAL COMPLETED & STORED TO DATE (Column G on G703) | $ | 374,143.95 |
| 5. RETAINAGE: | | |
| a. 5 % Completed Work (Column D + E on G703) | $ 18,707.20 | |
| b. 5 % of Stored Material (Column F on G703) | 0.00 | |
| Total Retainage (Line 5a +5b or Total in Column I of G703) | $ | 18,707.20 |
| 6. TOTAL EARNED LESS RETAINAGE (Line 4 less Line 5 Total) | $ | 355,436.75 |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT $ (Line 6 from prior Certificate) | | 326,138.75 |
| 8. CURRENT PAYMENT DUE | $ | 29,298.00 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE (Line 3 less Line 6) | $ | 43,959.64 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | 21,636.39 | 22,440.00 |
| Total approved this Month | 0.00 | 0.00 |
| TOTALS | 21,636.39 | 22,440.00 |
| NET CHANGES by Change Order | -803.61 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By: _____ PRESIDENT Date: 5/22/07

State of: New York
County of: Westchester
Subscribed and sworn to before me this 23rd day of May 2007
Notary Public: _____
My Commission expires:

ENID K. MORRONE
Notary Public, State of New York
No. 01MO6053997
Qualified in Westchester County
Commission Expires January 8, 20__

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Document, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED .......................... $

(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this Application and on the Continuation Sheet that are changed to conform to the amount certified.)

ARCHITECT:

By: _____ Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 APPLICATION AND CERTIFICATE FOR PAYMENT 1992 EDITION AIA 1992 THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W. WASHINGTON, D.C. 20006-5292

AIA DOCUMENT SHEET 1

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing Contractor's signed Certification is attached.

In tabulations below, amounts are stated to the nearest dollar.

Use Column I on Contracts where variable retainage for line items may apply.

(Instructions on reverse side)

PAGE 2 OF 2 PAGES

APPLICATION NO: 7
APPLICATION DATE: 5/22/2007
PERIOD TO: 4/30/2007
ARCHITECT'S PROJECT NO: 110BT 3665-8

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D+E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G÷C) | H BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| | General Conditions | 43,500.00 | 34,800.00 | 4,350.00 | | 39,150.00 | 90% | 4,350.00 | 1,967.50 |
| | Submittals | 7,500.00 | 7,500.00 | 0.00 | | 7,500.00 | 100% | 0.00 | 375.00 |
| | Clean Up During Construction | 10,000.00 | 8,000.00 | 1,000.00 | | 9,000.00 | 90% | 1,000.00 | 450.00 |
| | Mobilization | 15,000.00 | 15,000.00 | 0.00 | | 15,000.00 | 100% | 0.00 | 750.00 |
| | Container Service | 12,500.00 | 10,000.00 | 1,250.00 | | 11,250.00 | 90% | 1,250.00 | 562.50 |
| | Temporary Protection | 45,000.00 | 38,250.00 | 4,500.00 | | 42,750.00 | 95% | 2,250.00 | 2,137.50 |
| | Demolition & Removals | 22,000.00 | 18,700.00 | 2,200.00 | | 20,900.00 | 95% | 1,100.00 | 1,045.00 |
| | Cut & Patch | 15,000.00 | 12,750.00 | 1,500.00 | | 14,250.00 | 95% | 750.00 | 712.50 |
| | Doors & Hardware-M | 4,200.00 | 4,200.00 | 0.00 | | 4,200.00 | 100% | 0.00 | 210.00 |
| | Doors & Hardware-L | 4,300.00 | 3,655.00 | 430.00 | | 4,085.00 | 95% | 215.00 | 204.25 |
| | Windows-M | 2,000.00 | 2,000.00 | 0.00 | | 2,000.00 | 100% | 0.00 | 100.00 |
| | Windows-L | 500.00 | 425.00 | 0.00 | | 425.00 | 85% | 75.00 | 21.25 |
| | VCT Flooring-M | 650.00 | 520.00 | 0.00 | | 520.00 | 80% | 130.00 | 26.00 |
| | VCT Flooring-L | 1,850.00 | 1,480.00 | 185.00 | | 1,665.00 | 90% | 185.00 | 83.25 |
| | Painting-M | 3,300.00 | 2,475.00 | 330.00 | | 2,805.00 | 85% | 495.00 | 140.25 |
| | Painting-L | 19,200.00 | 14,400.00 | 1,920.00 | | 16,320.00 | 85% | 2,880.00 | 816.00 |
| | HVAC Work-M | 55,000.00 | 49,500.00 | 2,750.00 | | 52,250.00 | 95% | 2,750.00 | 2,612.50 |
| | HVAC Work-L | 31,000.00 | 27,900.00 | 1,550.00 | | 29,450.00 | 95% | 1,550.00 | 1,472.50 |
| | Electrical Work-M | 16,400.00 | 13,940.00 | 820.00 | | 14,760.00 | 90% | 1,640.00 | 738.00 |
| | Electrical Work-L | 21,100.00 | 17,935.00 | 1,055.00 | | 18,990.00 | 90% | 2,110.00 | 949.50 |
| | Fire Alarm Systems-M | 39,000.00 | 29,250.00 | 3,900.00 | | 33,150.00 | 85% | 5,850.00 | 1,657.50 |
| | Fire Alarm Systems-L | 31,000.00 | 23,250.00 | 3,100.00 | | 26,350.00 | 85% | 4,650.00 | 1,317.50 |
| | CA#1 SK1-3 Work-Bldg 15 | 2,042.67 | 2,042.67 | 0.00 | | 2,042.67 | 100% | 0.00 | 102.13 |
| | CA#2 SK1-3 Work-Bldg 17 | 11,816.16 | 11,816.16 | 0.00 | | 11,816.16 | 100% | 0.00 | 590.81 |
| | CA#3 SK1-3 Work-Bldg 18 | 7,977.56 | 7,977.56 | 0.00 | | 7,977.56 | 100% | 0.00 | 398.88 |
| | CA#6 Credits | -22,440.00 | -14,462.44 | 0.00 | | -14,462.44 | 64% | -7,977.56 | -723.12 |
| | | 399,396.39 | 343,303.95 | 30,840.00 | 0.00 | 374,143.95 | 94% | 25,252.44 | 18,707.20 |

TO: (CONSTRUCTION MANAGER:)
ThyssenKrupp Elevator Corp.
500 Executive Blvd.
Elmsford, NY 10523

FROM (CONTRACTOR:)
Construction Associates Inc.
677 Commerce Street
Thornwood, NY 10594
CONTRACTOR FOR:

PROJECT:
VA Castle Point
Building 16E, 17, 18, 19

VIA ARCHITECT:

AIA DOCUMENT G702

(Instructions on reverse side) PAGE 1 OF 2 PAGES

APPLICATION NO: 8
PERIOD TO: 6/30/2007
PROJECT NOS.: 110BT 3565-8

CONTRACT DATE: 3/22/2005

Distribution to:
___ CONST. MNGR.
___ ARCHITECT
___ CONTRACTOR

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | |
|---|---|
| 1. ORIGINAL CONTRACT SUM | $ 400,000.00 |
| 2. Net Change by Change Orders | $ -803.61 |
| 3. CONTRACT SUM TO DATE (Line 1 +/- 2) | $ 399,396.39 |
| 4. TOTAL COMPLETED & STORED TO DATE | $ 366,171.39 |
| (Column G on G703) | |
| 5. RETAINAGE: | |
| a. 5 % Completed Work | $ 19,308.57 |
| (Column D + E on G703) | |
| b. 5 % of Stored Material | $ 0.00 |
| (Column F on G703) | |
| Total Retainage (Line 5a +5b or | |
| Total in Column I of G703) | $ 19,308.57 |
| 6. TOTAL EARNED LESS RETAINAGE | $ 366,862.82 |
| (Line 4 less Line 5 Total) | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT | $ 355,436.75 |
| (Line 6 from prior Certificate) | |
| 8. CURRENT PAYMENT DUE | $ 11,426.07 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | $ 32,533.57 |
| (Line 3 less Line 6) | |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | 21,836.39 | 22,440.00 |
| Total approved this Month | 0.00 | 0.00 |
| TOTALS | 21,836.39 | 22,440.00 |
| NET CHANGES by Change Order | -603.61 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By: [signature]  PRESIDENT Date: 6/25/07

State of:  New York
County of:  Westchester
Subscribed and sworn to before
me this 25th day of June 2007
Notary Public: Enid K. Morrone
My Commission expires:

ENID K. MORRONE
Notary Public, State of New York
No. 01MO6053397
Qualified in Westchester County
Commission Expires January 8, 2011

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Document, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED ............................................. $
(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this Application and on the Continuation Sheet that are changed to conform to the amount certified.)

ARCHITECT:

By:                                        Date:

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 APPLICATION AND CERTIFICATE FOR PAYMENT 1992 EDITION AIA 1992 THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W. WASHINGTON, D.C. 20006-5292

AIA DOCUMENT G702, APPLICATION AND CERTIFICATE FOR PAYMENT, (Instructions on reverse side)

containing Contractor's signed Certification is attached.

In tabulations below, amounts are stated to the nearest dollar.

Use Column I on Contracts where variable retainage for line items may apply.

PAGE 2 OF 2 PAGES

APPLICATION NO: 8

APPLICATION DATE: 6/25/2007

PERIOD TO: 6/30/2007

ARCHITECT'S PROJECT NO: 110BT 3665-8

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D+E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G÷C) | H BALANCE TO FINISH (C-G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| | General Conditions | 43,500.00 | 39,150.00 | 2,175.00 | | 41,325.00 | 95% | 2,175.00 | 2,066.25 |
| | Submittals | 7,500.00 | 7,500.00 | 0.00 | | 7,500.00 | 100% | 0.00 | 375.00 |
| | Clean Up During Construction | 10,000.00 | 9,000.00 | 500.00 | | 9,500.00 | 95% | 500.00 | 475.00 |
| | Mobilization | 15,000.00 | 15,000.00 | 0.00 | | 15,000.00 | 100% | 0.00 | 750.00 |
| | Container Service | 12,500.00 | 11,250.00 | 625.00 | | 11,875.00 | 95% | 625.00 | 593.75 |
| | Temporary Protection | 45,000.00 | 42,750.00 | 2,250.00 | | 45,000.00 | 100% | 0.00 | 2,250.00 |
| | Demolition & Removals | 22,000.00 | 20,900.00 | 1,100.00 | | 22,000.00 | 100% | 0.00 | 1,100.00 |
| | Cut & Patch | 15,000.00 | 14,250.00 | 750.00 | | 15,000.00 | 100% | 0.00 | 750.00 |
| | Doors & Hardware-M | 4,200.00 | 4,200.00 | 0.00 | | 4,200.00 | 100% | 0.00 | 210.00 |
| | Doors & Hardware-L | 4,300.00 | 4,085.00 | 215.00 | | 4,300.00 | 100% | 0.00 | 215.00 |
| | Windows-M | 2,000.00 | 2,000.00 | 0.00 | | 2,000.00 | 100% | 0.00 | 100.00 |
| | Windows-L | 500.00 | 425.00 | 75.00 | | 500.00 | 100% | 0.00 | 25.00 |
| | VCT Flooring-M | 650.00 | 520.00 | 0.00 | | 520.00 | 80% | 130.00 | 26.00 |
| | VCT Flooring-L | 1,850.00 | 1,665.00 | 0.00 | | 1,665.00 | 90% | 185.00 | 83.25 |
| | Painting-M | 3,300.00 | 2,805.00 | 0.00 | | 2,805.00 | 85% | 495.00 | 140.25 |
| | Painting-L | 19,200.00 | 16,320.00 | 0.00 | | 16,320.00 | 85% | 2,880.00 | 816.00 |
| | HVAC Work-M | 55,000.00 | 52,250.00 | 2,200.00 | | 54,450.00 | 99% | 550.00 | 2,722.50 |
| | HVAC Work-L | 31,000.00 | 29,450.00 | 1,240.00 | | 30,690.00 | 99% | 310.00 | 1,534.50 |
| | Electrical Work-M | 16,400.00 | 14,760.00 | 820.00 | | 15,580.00 | 95% | 820.00 | 779.00 |
| | Electrical Work-L | 21,100.00 | 18,990.00 | 1,055.00 | | 20,045.00 | 95% | 1,055.00 | 1,002.25 |
| | Fire Alarm Systems-M | 39,000.00 | 33,150.00 | 3,900.00 | | 37,050.00 | 95% | 1,950.00 | 1,852.50 |
| | Fire Alarm Systems-L | 31,000.00 | 26,350.00 | 3,100.00 | | 29,450.00 | 95% | 1,550.00 | 1,472.50 |
| | CA#1 SK1-3 Work-Bldg 15 | 2,042.67 | 2,042.67 | 0.00 | | 2,042.67 | 100% | 0.00 | 102.13 |
| | CA#2 SK1-3 Work-Bldg 17 | 11,816.16 | 11,816.16 | 0.00 | | 11,816.16 | 100% | 0.00 | 590.81 |
| | CA#3 SK1-3 Work-Bldg 18 | 7,977.56 | 7,977.56 | 0.00 | | 7,977.56 | 100% | 0.00 | 398.88 |
| | CA#6 Credits | -22,440.00 | -14,462.44 | -7,977.56 | | -22,440.00 | 100% | 0.00 | -1,122.00 |
| | | 399,396.39 | 374,143.95 | 12,027.44 | 0.00 | 386,171.39 | 97% | 13,225.00 | 19,308.57 |